# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| JAMES STERNER, | : | No. 3:16cv2453 |
| --- | --- | --- |
| Plaintiff | : | |
| | : | (Judge Munley) |
| v. | : | |
| | : | |
| LIBERTY INSURANCE | : | |
| CORPORATION t/a Liberty Mutual, | : | |
| Defendant | : | |

## MEMORANDUM

Before the court for disposition is Defendant Liberty Insurance Corporation t/a Liberty Mutual's motion for summary judgment. The parties have briefed their respective positions and the matter is ripe for disposition.

**Background**

Plaintiff James Sterner, along with his wife Helen Sterner, had a Homeowners Insurance Policy issued by Defendant Liberty Insurance Company. (Doc. 14, Def. Statement of Facts (hereinafter "SOF") ¶ 5). The policy covered their home located at 549 N. Gates, Avenue, Kingston, PA 18704. (Id.) Fire destroyed the home insured by the policy on October 20, 2015. (Id. ¶ 6). Christopher Miller, the claims adjuster assigned by defendant to the case, drafted an estimate of $147,778.83 replacement cost value and $102,443.68 actual cost value. (Id. ¶¶ 7, 35). Defendant assigned content specialist Angela Stewart to adjust the personal property claim. (Id. ¶ 10). She completed a content estimate

totaling $93,418.05 replacement cost value and $56,960.44 actual cash value. (Id. ¶ 38).

Defendant denied paying benefits to the plaintiff on the basis of the "intentional loss exception." (Doc. 2, Compl. ¶ 15). This exception to insurance coverage provides an exclusion to coverage where the loss is "arising out of any act an 'insured' commits or conspires to commit with the intent to cause a loss. In the event of such loss, no 'insured' is entitled to coverage, even 'insureds' who did not commit or conspire to commit the act causing the loss." (SOF ¶ 41).

Helen Sterner pled guilty to starting the fire. (Id. ¶¶ 63-65). Thus, as one of the insureds started the fire, the defendant used the "intentional loss exclusion" to deny the benefits.

Plaintiff argues that an exception to the intentional loss exclusion applies. The policy provides: The intentional loss exclusion "will not apply to deny payment to the 'insured' who did not cooperate in or contribute to the creation of the loss if the loss: [is otherwise covered] and [a]rises out of abuse to the innocent 'Insured' by another 'insured'.". (Id. ¶ 41).

Based upon these facts, plaintiff instituted the instant action in the Court of Common Pleas for Luzerne County. The two-count complaint alleges both breach of contract (Doc. 2, Compl. ¶¶ 17-28) and bad faith pursuant to 42 Pa. Cons. Sat. § 8371 (Id. ¶¶ 29-30). Defendant removed the case to this court on

2

December 12, 2016. (Doc. 1, Not. of Removal). At the close of discovery, defendant moved for summary judgment, bringing the case to its present posture.

**Jurisdiction**

This court has jurisdiction pursuant to the diversity statute, 28 U.S.C. § 1332. Plaintiff James Sterner is a citizen of the Commonwealth of Pennsylvania. (Doc. 1, Not. of Removal ¶ 6). Defendant Liberty Insurance Company is an Illinois corporation with a principal place of business in Boston, Massachusetts. (Id. ¶ 7). The amount in controversy is in excess of $75,000. (Id. ¶ 11). Because complete diversity exists among the parties, and the amount in controversy exceeds $75,000, the court has jurisdiction. See 28 U.S.C. § 1332 ("[D]istrict courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between. . . citizens of different States[.]").

As a federal court sitting in diversity, the substantive law of Pennsylvania applies to the instant case. Chamberlain v. Giampapa, 210 F.3d 154, 158 (3d Cir. 2000) (citing Erie R.R. v. Tompkins, 304 U.S. 64, 78 (1938)).

**Legal Standard**

Granting summary judgment is proper "'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

3

any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" See Knabe v. Boury, 114 F.3d 407, 410 n.4 (3d Cir. 1997) (quoting FED. R. CIV. P. 56(c)). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original).

In considering a motion for summary judgment, the court must examine the facts in the light most favorable to the party opposing the motion. Int'l Raw Materials, Ltd. v. Stauffer Chem. Co., 898 F.2d 946, 949 (3d Cir. 1990). The burden is on the moving party to demonstrate that the evidence is such that a reasonable jury could not return a verdict for the non-moving party. Anderson, 477 U.S. at 248 (1986). A fact is material when it might affect the outcome of the suit under the governing law. Id. Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial. Celotex v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies its burden, the burden shifts to the nonmoving party, who must go

4

beyond its pleadings, and designate specific facts by the use of affidavits, depositions, admissions, or answers to interrogatories showing that there is a genuine issue for trial. Id. at 324.

**Discussion**

Defendant has moved for summary judgment on both counts of plaintiff's complaint. We will address the arguments relating to each count separately.

**I. Breach of Contract**

Defendant first attacks plaintiff's breach of contract claim. It argues that no genuine issues of material facts exist because it properly denied the insurance claim based upon the insurance policy's "Intentional Loss" exclusion . This portion of the insurance policy provides as follows:

> **Intentional Loss**
> a. Intentional Loss means any loss arising out of any act an "insured" commits or conspires to commit with the intent to cause a loss. In the event of such loss, no "insured" is entitled to coverage, even "insureds" who did not commit or conspire to commit the act causing the loss.

(Doc. 14-2, Def. Ex. C at 23 of 24).

Defendant's position is that this loss exclusion applies to plaintiff's loss, thus, the breach of contract claim fails as a matter of law. One of the insureds, Helen Sterner, pled guilty to intentionally setting fire to the house. She pled guilty to a charge of arson with intent to destroy an unoccupied building in violation of 18 PA. CONS. STAT. ANN. § 3301(c)(1). At the guilty plea hearing, she admitted

5

under oath that she "intentionally set fire to . . . the residence shared by her and her husband. She did so using an ignitable liquid that was poured in both the basement and the dining room areas of the residence and then ignited it." (Doc. 14-5, Def. Ex. T at 6-7).

Thus, because Helen Sterner is an "insured" under the policy and she intentionally set fire to the house, the claim was properly denied according to the defendant. Plaintiff James Sterner may be an "innocent" insured but under the policy he is not entitled to benefits.

The plaintiff does not deny that an "insured" started the fire. He points, however, to an exception to the intentional loss exclusion. The exception provides that the intentional exclusion does not apply to an "insured" "who did not cooperate in or contribute to the creation of the loss" if the loss is to property which is otherwise covered, and arises of out of "abuse" to that innocent insured by another insured. (Doc. 14-2, Def. Ex. C at 23 of 24).

Plaintiff alleges that the destruction of the property by Helen Sterner was an act of "abuse" against him. Thus, the exclusion does not apply.

Abuse is defined in the exception "as defined in the Pennsylvania Protection From Abuse Act; or . . . attempting to cause or intentionally, knowingly or recklessly causing damage to covered property so as to intimidate or attempt to control the behavior of another person." Id. Plaintiff's complaint avers that

6

Helen Sterner "was suffering from serious mental health issues and either intentionally, knowingly or recklessly set fire to the house as a way to intimidate the Plaintiff or to control the Plaintiff's behavior." (Doc. 2, Compl. ¶ 21).

Defendant argues that no evidence suggests that Helen set fire to the house in an attempt to intimidate or control her husband's behavior. The evidence reveals that on the date of the fire, Helen Sterner was asleep when plaintiff left for work. (Doc. 14-5, Def. Ex. P, Recorded Statement of Plaintiff at 11). Nothing unusual happened that morning. (Id.) When asked whether any circumstances, conflicts or issues in his life were connected with the house fire, plaintiff responded "Absolutely, absolutely not." (Id. at 7). In fact, Helen never made any prior indication that she would set the house on fire. (Id. at 10, 21). Police had never been called to the house for domestic abuse issues and Plaintiff and Helen Sterner had not had any recent arguments or disagreements. (Id. at 10-12). Instead of attempting to control or intimidate the plaintiff, defendant argues that Helen set the fire at a time when plaintiff was not home in an attempt to kill herself.

We find that a question of fact exists as to whether Helen set fire to the house in an attempt to intimidate or control her husband's behavior. She left a note for him, where she, *inter alia*, accused him of adultery and talked of punishing the plaintiff. (Doc. 16-1, Pl. Dep. at 37, 65, 105). Additionally, she and

7

the plaintiff had recently had a major argument regarding her behavior toward their son-in-law's parents. Moreover, the defendant's argument that Helen Sterner intended to kill herself is belied by the fact that she evidently left the building immediately upon setting fire to it.

As questions of fact exist with regard to whether Helen Sterner engaged in abuse as defined in the policy, summary judgment on the breach of contract claim is inappropriate.

**II. Bad Faith**

The second count of plaintiff's complaint alleges that the defendant engaged in bad faith pursuant to 42 PA. CONS. ST. ANN. § 8371. Plaintiff claims that the defendant committed bad faith in "conducting an improper investigation, denying payment of the full value of the claims, and denying the claim after accepting the claim[.]" (Doc. 2, Compl. ¶ 29).

Pennsylvania courts have adopted the following definition of "bad faith" on the part of an insurer: any frivolous or unfounded refusal to pay proceeds of a policy; it is not necessary that such refusal be fraudulent. For purposes of an action against an insurer for failure to pay a claim, such conduct imports a dishonest purpose and means a breach of a known duty (i.e., good faith and fair dealing), through some motive of self-interest or ill will; mere negligence or bad judgment is not bad faith. Perkins v. State Farm Ins. Co., 589 F. Supp. 2d 559,

8

562 (M.D. Pa. 2008) (citing Terletsky v. Prudential Prop. & Casualty Ins. Co., 649 A.2d 680, 688 (Pa. Super. Ct. 1994); see also Nw. Mut. Life Ins. Co. v. Babayan, 430 F.3d 121, 137 (3d Cir. 2005) (predicting the Pennsylvania Supreme Court would define "bad faith" according to the definition set forth in Terletsky ).

The Third Circuit Court of Appeals has adopted the legal standard established by the Pennsylvania Superior Court for testing the sufficiency of bad faith claims under section 8371, "both elements of which must be supported with clear and convincing evidence: (1) that the insurer lacked a reasonable basis for denying benefits; and (2) that the insurer knew or recklessly disregarded its lack of reasonable basis." Klinger v. State Farm Mut. Auto. Ins. Co., 115 F.3d 230, 233 (3d Cir.1997) (citing Terletsky, 649 A.2d at 688). While this test represents the general criteria, the Third Circuit has recognized that bad faith conduct extends to "a frivolous or unfounded refusal to pay, lack of investigation into the facts, or a failure to communicate with the insured." Frog, Switch & Mfg. Co., Inc. v. Travelers Ins. Co., 193 F.3d 742, 751 n. 9 (3d Cir. 1999).

If a plaintiff prevails in establishing bad faith, section 8371 empowers the court to impose the following remedies: 1) interest from the date the claim was made by the insured at a rate equal to the prime rate of interest plus 3%; 2) punitive damages against the insurer; and 3) court costs and attorney fees against the insurer.

More specifically, in the instant case, plaintiff alleges that the defendant engaged in bad faith "by failing to investigate, consider and/or alert the Plaintiff to the abuse exception to the exclusion for an intentional act by a spouse and instead attempting to lead the Plaintiff to believe that the denial had no exception, all of which was deceptive[.]" (Id. ¶ 30(o)). Defendant argues that it properly investigated the claim and correctly denied the claim. Plaintiff argues that material issues of fact exist with regard to the defendant's handling of the claim.

In support of his position, plaintiff points to the letter which defendant sent denying the insurance claim. (Doc. 14-5, Def. Ex. Q at 36 of 52). The letter lists James and Helen Sterner as the "Insured" and it is addressed to them. (Id.) It indicates that the "Insured" committed the loss intentionally. (Id.) Plaintiff alleges that this assertion is untrue. The defendant at the point of the denial knew that plaintiff had nothing to do with the loss. The letter thus falsely accuses plaintiff. The letter sets forth the exclusion for intentional loss, it does not include, however, the exception to the exclusion. Plaintiff claims that the defendant failed to investigate and notify the plaintiff as to why the exception to the intentional loss exclusion did not apply. We agree that based upon this evidence a jury may find that the defendant did not investigate the exception to the intentional loss exclusion or attempted to keep its investigation into the exception away from

the plaintiff. It will be for the factfinder to determine if these facts amount to bad faith.

Based on the above facts, we find that genuine issues of fact surround whether the defendant acted in bad faith in denying the claim and failing to apply the "innocent insured" exception to the "Intentional Loss" exclusion. Accordingly, summary judgment will be denied on this issue.

**Conclusion**

For the reasons set forth above, we find that genuine questions of material fact exist as to whether the defendant breached the insurance contract and whether they acted in bad faith. Accordingly, the motion for summary judgment will be denied. An appropriate order follows.

**Date: February 22, 2018**         **s/ James M. Munley**
                                    **JUDGE JAMES M. MUNLEY**
                                    **United States District Court**